In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00344-CR
_____

TINA RICHEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 23-06-08074-CR

**MEMORANDUM OPINION**

Appellant Tina Richey ("Richey") appeals her conviction for hindering apprehension or prosecution, a third-degree felony punishable by two to ten years imprisonment and a fine of up to $10,000. *See* Tex. Penal Code Ann. §§ 12.34, 38.05(d). In a single issue, Richey argues that the trial court erred by denying her request to include a jury instruction permitting the jury to convict her of a lesser-included offense pursuant to section 38.05(c). *See id*. § 38.05(c). More specifically,

1

Richey argues that with her requested instruction, the jury could have found her guilty of hindering the apprehension of a misdemeanant rather than a felon, thus her conviction would have been a class A misdemeanor instead of a felony. *See id.* We overrule her issue because the trial court did not err by denying the requested jury instruction, and we affirm the trial court's judgment.

## BACKGROUND

Richey's husband, John Butler ("Butler"), was charged with aggravated assault causing bodily injury, a felony, and a warrant was issued for his arrest. When officers went to Butler's home to arrest him, Richey impeded the officers' efforts, eventually resulting in her arrest, prosecution, and conviction. After the jury convicted Richey, the trial court sentenced Richey according to the parties' agreement: ten years imprisonment, probated for two years, with no fine.

The indictment alleges that "on or about" May 31, 2023, Richey

> did then and there, with intent to hinder the arrest, prosecution, conviction, or punishment of John Butler for an offense, harbor or conceal John Butler or provide or aid in providing John Butler with any means of avoiding arrest or effecting escape or warn John Butler of impending discovery or apprehension, and the defendant knew that John Butler was under arrest for, charged with, or convicted of a felony[.]

During the charge conference, Richey requested the trial court to instruct the jury on a lesser-included offense. Noting that "there's not an affirmative showing of

2

a misdemeanor[,]" the trial court denied Richey's request. We summarize the pertinent information below.

<u>The Charge</u>

The court's charge reflects the following applicable definitions and instructions:

**THE LAW ON HINDER APPREHENSION OR PROSECUTION KNOWN FELON**

Our law provides that a person commits the offense of Hinder Apprehension or Prosecution Known Felon, when, with intent to hinder the arrest of another for an offense, harbors or conceals the other or provides or aids in providing the other with any means of avoiding arrest, and the person knows that the other person is under arrest for or charged with a felony.

**Definitions**

The following definitions apply in regards to the law of Hinder Apprehension or Prosecution Known Felon. The definition of a term applies to each grammatical variation of the term.

- "Person" means an individual. "Individual" means a human being who is alive.

- "Conduct" means an act and its accompanying mental state.

- "Act" means a bodily movement, whether voluntary or involuntary.

- "Another" means a person other than the actor.

- "Actor" means a person whose criminal responsibility is in issue in a criminal action.

3

- "Felony" means an offense so designated by law or punishable by confinement in a penitentiary.

- A person acts intentionally, or with intent, with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct.

- A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

. . . .

## APPLYING THE LAW ON HINDER APPREHENSION OR PROSECUTION KNOWN FELON TO THIS CASE

Now, bearing in mind the foregoing definitions and instructions, if you unanimously find from the evidence beyond a reasonable doubt that on or about May 31, 2023, in Montgomery County, Texas, the Defendant, Tina Richey, did then and there with intent to hinder the arrest of John Butler for an offense, harbor or conceal John Butler, and the defendant knew that John Butler was under arrest for or charged with a felony, then you will find her guilty as charged in the indictment.

Or, if you unanimously find from the evidence beyond a reasonable doubt that on or about May 31, 2023, in Montgomery County, Texas, the Defendant, Tina Richey, did then and there with intent to hinder the arrest of John Butler for an offense, provide or aid in providing John Butler with any means of avoiding arrest, and the defendant knew that John Butler was under arrest for or charged with a felony, then you will find her guilty as charged in the indictment.

If you do not so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict, "not guilty."

Richey's Requested Instruction

Richey's requested instruction reads:

4

Now, bearing in mind the foregoing definitions and instructions, if you unanimously find from the evidence beyond a reasonable doubt that on or about May 31, 2023, in Montgomery County, Texas, the Defendant, Tina Richey, did then and there with intent to hinder the arrest of John Butler for an offense, harbor or conceal John Butler, you will find the Defendant guilty of the lesser-included offense of Hindering Apprehension o[r] Arrest.

If you do not so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict "Not Guilty[.”]

Your sole duty at this point is to determine whether the Defendant has been proven guilty. You must restrict your deliberations to this sole issue.

After you have arrived at your verdict, you are to use one of the forms attached to these instructions. You should have your foreperson sign his or her name to the particular form that conforms to your verdict.

Testimony of Specialists Steven Thomas, Steven Ortiz, and Deputy Jordan Pankratz

Specialist Steven Thomas ("Thomas") testified that on the day of the offense, he was a deputy with the Montgomery County Sheriff's Office, and was assigned to the Homeland Division under SWAT, the Special Weapons and Tactics team. This team dealt "mainly with critical incidents, meaning barricaded subjects, hostage rescue, active shooter," and similar situations.

After outlining his educational and law enforcement training and experience, Thomas explained that he, Steven Ortiz (Ortiz"), and Deputy Jordan Pankratz ("Pankratz") were "also task force officers with the US Marshals." These officers were "part of the Gulf Coast Violent Offenders Task Force[]" and served warrants

5

when they were not training for or performing SWAT operations. As Thomas described the team's activities, he and his colleagues spent "most of the time [] out in the county looking for wanted fugitives." Since they need to "blend in[]" while working, they wear plain clothes and drive unmarked vehicles. Despite the plain clothes and unmarked vehicles, however, Thomas testified that the officers put on marked ballistic vests identifying them as law enforcement officers while serving a warrant.

When assigned a case, Thomas receives a warrant packet, which "normally consists of a base information page on a cover sheet, a picture of the wanted fugitive, and then an actual copy of the warrant." The standard next step is to confirm that the warrant is still active, and if so, to attempt to find addresses, telephone numbers, and vehicle information to try to locate the subject of the warrant. Upon obtaining such information, Thomas will drive by the area to try to see either the person or his vehicle. Thomas would also attempt to locate fugitives by speaking to the manager at the subject's last known workplace or the apartment manager where a subject lived.

Although procedures can differ from one subject to another, upon arriving at a subject's residence, Thomas usually knocks on the door, calls out the subject's name, announces the applicable agency, that he is there to serve a felony warrant, and that the subject needs to exit the house. Thomas testified that the team follows

this procedure to alert the occupants of the house that it is the police who are at the front door, so that they will not feel threatened.

On the offense date of May 31, 2023, Thomas was executing warrants as a task force officer. To locate Butler, who was wanted for aggravated assault causing bodily injury, Thomas testified that he followed his usual procedure, first driving by Butler's address and identifying a vehicle associated with Butler. Thomas then parked down the street and watched the house and the vehicle. While watching the house, Thomas saw Butler retrieve an Amazon package.

When the rest of the SWAT team members arrived at the scene, they followed the plan, which was for Thomas, Specialist Fisher, and Ortiz to approach the front door, and for Pankratz and Investigator Morris to go to the rear of the house. As soon as the backyard team was in place, Thomas knocked on the front door and stated, "Sheriff's office. We have a felony warrant for John Butler. I need you to come to the front door." Thomas testified that he then heard a man's voice saying, "the law's here. They've got me[,]" but neither Butler nor anyone else exited the house. Thomas therefore began "giving verbal commands for [Butler] to open the front door." While giving these commands, Thomas heard dogs barking, and Butler requested time to lock up the dogs, since they were aggressive. Thomas granted Butler's request, and when Butler went to secure the dogs, Richey came to the door and yelled that they needed to leave. During this time, Thomas stated "multiple times" that he was there

7

to serve a felony warrant on Butler. Richey continued telling the officers to leave, Thomas kept telling Richey why the officers were there, and Richey told Thomas that Butler was not present. Richey did not open the door, but did make a telephone call to 911, and reported that "she was in fear for her life and that men were trying to break her door down."

Since Richey did not open the door in response to the officers' commands, and was "very irate, upset, and not cooperating[,]" the officers forced the door open using a "ram," which Thomas described as a pipe with handles on it. When the officers initially struck the door with the ram, the door "instantly closed, like there was positive pressure behind it forcing it back closed." When they again struck the door, it opened, striking Richey, who fell to the floor in the doorway. Due to being hit with the door, Richey sustained "a bump and a laceration on her forehead." Thomas testified that Richey continued "screaming and hollering that they were breaking down [her] door and that she needed an ambulance." The officers secured Richey outside the house and arrested Butler pursuant to the warrant. The officers also requested that a marked unit come to the scene to not only secure either Butler or Richey in the back of the patrol car, but to demonstrate that they were, in fact, law enforcement officers. After Richey was transported to a hospital by ambulance and treated for her injuries, Thomas arrested Richey for the current offense.

Ortiz and Pankratz testified, confirming Thomas' testimony about Richey's behavior when the team came to Richey's home to arrest Butler. Ortiz testified that Richey "was being very confrontational[,]" and that Richey's demeanor did not change after a marked unit arrived at the scene. Pankratz testified that the officers announced that they had a felony warrant for Butler's arrest, but that Richey was "refusing to open the door." Pankratz further characterized Richey's demeanor as "very hysterical, very loud and animated." In addition, Pankratz recalled that Richey acknowledged knowing about Butler's warrant "because they had been talking to an attorney and that they had also been talking to a detective with Montgomery County Sheriff's Office about the charge[.]" According to Pankratz, Richey stated that Butler "would be given the opportunity to turn himself in[,]" and Pankratz interpreted Richey's statements to mean that Richey "was aware that [Butler] had a felony warrant out for his arrest, that she knew [Butler] was at the residence, but that she was trying to conceal [Butler] inside." Although Pankratz did not testify that Richey admitted knowing that Butler's warrant was for a felony, he stated that Richey "indicated that she knew what the charge was, for aggravated assault."

Deputy Joshua Franklin's Testimony

Deputy Franklin ("Franklin"), with the Montgomery County Sheriff's office, testified that he worked as a patrol deputy and described his educational and professional background. His duties included responding to calls for service,

9

assisting other agencies, and the like. According to Franklin, when the SWAT team executes a warrant, it sometimes needs a "marked unit" to transport a person. Franklin therefore "was called in to do a transport for Mr. Butler, and to be a marked unit on the location." Franklin further testified that he was in uniform at the time.

On the day of the offense, Franklin was called to Richey's residence, both to transport Butler and because "there was some discrepancies [sic] over who was outside and knocking on the door." Franklin testified that he had no contact with Richey but instead dealt with Butler and the officers who had Butler in custody. Franklin recalled that when he arrived at the scene, Butler was already in custody and Richey was on the front porch, "screaming and yelling about a couple of different things, and I think we were waiting on EMS to get her some medical attention." Franklin characterized Richey's demeanor as "extremely upset[]" and "a little hysterical."

Other Evidence

The record contains multiple photographs of the officers, showing that although they were not in uniform while executing the warrant for Butler's arrest, they were wearing official insignia showing that they were law enforcement officers.

The record also contains the recording of Richey's 911 call, wherein the 911 operator tells Richey, "They are police," "they're there to serve a warrant," and instructs Richey to cooperate and open the door to the officers.

10

## ANALYSIS

Section 38.05 of the Texas Penal Code states, in pertinent part:

(a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:

    (1) harbors or conceals the other;

    (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or

    (3) warns the other of impending discovery or apprehension.

. . .

(c) Except as provided by Subsection (d), an offense under this section is a Class A misdemeanor.

(d) An offense under this section is a felony of the third degree if the person who is harbored, concealed, provided with a means of avoiding arrest or effecting escape, or warned of discovery or apprehension is under arrest for, charged with, or convicted of a felony, including an offense under Section 62.102, Code of Criminal Procedure, or is in custody or detention for, is alleged in a petition to have engaged in, or has been adjudicated as having engaged in delinquent conduct that violates a penal law of the grade of felony, including an offense under Section 62.102, Code of Criminal Procedure, and the person charged under this section knew that the person they harbored, concealed, provided with a means of avoiding arrest or effecting escape, or warned of discovery or apprehension is under arrest for, charged with, or convicted of a felony, or is in custody or detention for, is alleged in a petition to have engaged in, or has been adjudicated as having been engaged in delinquent conduct that violates a penal law of the grade of felony.

Tex. Penal Code Ann. § 38.05.

Before closing statements, the trial court must give the jury a written charge setting forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. If there is error in the court's charge, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Id.* art. 36.19. *Almanza v. State* sets out the standard of review for alleged jury charge error. 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Our review of charge error is a two-step process. *See id.* First, we must determine whether there was error in the court's charge. *See id.*; *see also Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If a reviewing court determines there was error in the charge, it then assesses the level of harm. *Taylor*, 332 S.W.3d at 489; *Ngo*, 175 S.W.3d at 743-44; *Almanza,* 686 S.W.2d at 171.

*Almanza* construed article 36.19 as providing two distinct standards of jury charge error. *See Taylor*, 332 S.W.3d at 489. *Almanza* further explained that the two standards set forth in article 36.19 depended upon whether a defendant made a timely objection to the charge. *See Almanza*, 686 S.W.2d at 171; *see also Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Taylor*, 332 S.W.3d at 489. If a timely objection was made in the trial court, a reviewing court will reverse if the error was "calculated to injure the rights of [the] defendant," which the Court of Criminal

Appeals has interpreted to mean "some harm." Tex. Code Crim. Proc. Ann. art. 36.19; *Taylor*, 332 S.W.3d at 489. Conversely, if a defendant does not timely object to the charge, the reviewing court will not reverse unless the error resulted in egregious harm to the defendant, which means he did not receive a "fair and impartial trial." Tex. Code. Crim. Proc. Ann. art. 36.19; *Marshall*, 479 S.W.3d at 843. In determining whether charge error is egregious we consider: (1) the entirety of the jury charge; (2) the state of the evidence; (3) counsel's arguments; and (4) any other relevant information contained in the entire trial record. *See Marshall*, 479 S.W.3d at 843.

When addressing charge error contending that the trial court failed to instruct the jury on a lesser-included offense, we apply a two-step test to determine whether a lesser-included offense instruction should have been given to the jury. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). The first step requires the trial court to determine "whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock*, 509 S.W.3d at 924. Where the requested offense is established by proof of the same or less than all the facts required to establish the offense charged, the first step is satisfied. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 37.09.

"The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury." *Bullock*, 509 S.W.3d at 924-25. Under this step, "a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* at 925. "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* This step requires "examining all the evidence admitted at trial, not just the evidence presented by the defendant." *Id.* A defendant is entitled to the instruction on anything more than a scintilla of evidence, but "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* When reviewing the trial court's ruling, we cannot consider "'the credibility of the evidence and whether it conflicts with other evidence or is controverted.'" *Id.* (quoting *Goad v. State*, 354 S.W.3d 443, 446-47 (Tex. Crim. App. 2011)). Accordingly, "'the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations.'" *Id.* (quoting *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)).

14

It is not sufficient that the evidence merely raises the possibility of the lesser offense; to be entitled to an instruction on a lesser-included offense, the evidence must establish the lesser offense as a valid, rational alternative to the charged offense. *See Wesbrook v. State*, 29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000); *see also Creel v. State*, 710 S.W.2d 120, 133 (Tex. App.—San Antonio 1986), *aff'd*, 754 S.W.2d 205 (Tex. Crim. App. 1988) (holding trial court did not err in denying lesser-included offense charge where inferences and conjectures appellant categorized as "'some evidence'" amounted to nothing more than a mere surmise or suspicion of the existence of the fact sought to be established) (quoting *Joske v. Irvine*, 91 Tex. 574, 582 (1898)).

Richey's sole appellate complaint argues that the trial court erred by refusing to instruct the jury about a lesser-included offense. In support of her position, Richey contends that not only is the misdemeanor of hindering apprehension or prosecution a lesser-included offense of the felony of hindering apprehension or prosecution, which the State admits, but also "there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting [her] of the lesser-included offense." Therefore, Richey contends, she met the applicable standard and was entitled to the instruction she sought. *See* Tex. Code Crim. Proc. Ann. art. 37.09. We agree that the misdemeanor offense of hindering apprehension or prosecution is a lesser-included offense of the felony offense of hindering apprehension. *See*

*Nowlin v. State*, 473 S.W.3d 312, 316-17 (Tex. Crim. App. 2015). We do not, however, agree that the record reflects evidence that Richey believed Butler was charged with a misdemeanor rather than a felony.

Here, as in *Nowlin*, the distinction between felony and misdemeanor hindering apprehension charges is the defendant's knowledge that she hindered the apprehension of an accused felon. *Id.* at 315-16. The *Nowlin* court reformed the defendant's conviction from a felony to a misdemeanor on the basis that Nowlin could not have known of the felony nature of the charge she was hindering, since the indictment was sealed. *Id.* at 319. The evidence of the sealed indictment both negated Nowlin's guilt of the felony offense and constituted the necessary "affirmative evidence" that Nowlin was guilty of only the lesser-included offense. *Id.*; *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("Meeting this threshold requires more than mere speculation – it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.").

In the case at bar, Richey contends the record contains evidence suggesting that she was too distraught from the police at her door to realize that Butler was charged with a felony. While this evidence raises the possibility of the lesser offense, it is not "directly germane to the lesser-included offense[.]" *Bullock*, 509 S.W.3d at 925. In other words, this evidence does not show that Richey believed that Butler

16

was charged with a misdemeanor. To the contrary, the evidence in the record shows that Richey knew of the charge against Butler, as illustrated by her statement to Pankratz that she "knew what the charge was, for aggravated assault." Aggravated assault is a felony. Tex. Penal Code Ann. § 22.02(b). Since everyone is presumed to know the law, Richey's knowledge of the charge against Butler sufficed to apprise Richey that Butler was charged with a felony. *See Hayes v. State*, 672 S.W.2d 246, 247-48 (Tex. App.—Beaumont 1984, no pet.). *Nowlin* supports this approach to Richey's knowledge of Butler's felony charge, in that *Nowlin* states that "if the State proved that [Nowlin] knew of the charge, her felony conviction is valid." *Nowlin*, 473 S.W.3d at 318. In addition, Thomas knocked on the front door and stated, "Sheriff's office" and "we have a felony warrant for John Butler. I need you to come to the front door." Thomas stated "multiple times" that he was there to serve a felony warrant on Butler.

Since the record indicates that Richey knew of Butler's charge, and that she was told it was a felony warrant, there is no evidence that would have led Richey to believe Butler was wanted only for a misdemeanor, and Richey's argument that she did not know Butler was charged with a felony is unsupported by the record and does not support her contention that she was entitled to the misdemeanor instruction. *See id.; and see Cavazos*, 382 S.W.3d at 385. We conclude that the trial court correctly declined to instruct the jury as to a lesser-included offense. There being no

17

error in the trial court's decision, we need not consider the possible harm resulting from it. *See Taylor*, 332 S.W.3d at 489; *Ngo*, 175 S.W.3d at 743-44; *Almanza,* 686 S.W.2d at 171; *see also* Tex. R. App. P. 47.1.

We overrule Richey's sole appellate issue.

## CONCLUSION

Having determined that Richey was not entitled to the instruction she sought, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on April 15, 2026
Opinion Delivered July 15, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.